D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

*Attorneys for Plaintiff and putative FLSA
Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**ALYSSA VIENS, on behalf of herself and all**
**others similarly situated,**

**Plaintiff,**

    **v.**

**GOOD PAL CHANTELLE CORP. d/b/a**
**HOTEL CHANTELLE, THE AMBER**
**AVALON CORP., GOOD PAL RAVEL**
**CORP., RAVEL HOTEL LLC d/b/a RAVEL**
**MGMT LLC and d/b/a PROFUNDO DAY**
**CLUB,**

**Defendants.**
-----------------------------------------------------------x

**COLLECTIVE ACTION COMPLAINT**

**FLSA COLLECTIVE ACTION AND**
**RULE 23 CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiff Alyssa Viens alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA. This Court has supplemental jurisdiction over New York state law claims brought under the NYLL, as they are so related to the other claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this

District.

## **PARTIES**

3.     Defendant The Amber Avalon Corp. ("Amber Avalon") operates the bar and nightclub called Hotel Chantelle ("Hotel Chantelle" or the "Restaurant") located at 92 Ludlow Street, New York, NY 10002.

4.     Public filings, such as liquor license documents and litigation documents, show that Defendant Amber Avalon operates Hotel Chantelle.

5.     Defendant Good Pal Chantelle Corp. is a New York corporation that owns and operates Hotel Chantelle together with Amber Avalon.    Defendant Good Pal Chantelle Corporation issued Plaintiff tax forms at the end of the year for work she performed at Hotel Chantelle.

6.     Defendant Good Pal Ravel Corp. is a New York Corporation that owns and operates Profundo Day Club, located at 8-08 9th Street, Long Island City, New York 11101 ("Profundo" or the "Pool Club"). Profundo is an adults-only bar and restaurant centered around a swimming pool. Profundo is open for business May through August. Defendant Good Pal Ravel Corp. issued Plaintiff tax forms at the end of the year for work she performed at Hotel Chantelle.

7.     Defendant Ravel Hotel LLC is a New York limited liability company that owns and operates Profundo together with Defendant Good Pal Ravel Corporation.

8.     Public filings-such as liquor license documents - show that Defendants Ravel Hotel LLC and Good Pal Ravel Corporation operate Profundo Pool Club.

9.     Defendants Ravel Hotel LLC, Good Pal Ravel Corp., Good Pal Chantelle Corp., and Amber Avalon, are hereafter referred to as the "Corporate Defendants."

10.     Defendant Ravi Patel ("Patel") is an owner of the Corporate Defendants.

11.     Patel is listed with the New York State Liquor Authority as a principal of Profundo and Hotel Chantelle.

12.     Patel is listed with the New York Department of State as the Chief Executive Officer of Amber Avalon.

13.     As CEO, Patel possesses the ultimate authority with respect to all employment authorities at Profundo and Hotel Chantelle, including hiring/firing, scheduling, payroll, and employee discipline.  For example, Patel participated in the decision to hire James Ciacci as the Chief Financial Officer of Amber Avalon, and Mr. Ciacci was in charge of paying employees' wages and tips at Amber Avalon.

14.     Patel visits Hotel Chantelle and Profundo several times a year to discuss general management issues.

15.     Defendant Frank Alessio ("Alessio") is an active owner of the Corporate Defendants.

16.     Alessio's LinkedIn biographical information lists him as the "Managing Partner" of Profundo and Hotel Chantelle.

17.     Alessio is regularly present at Hotel Chantelle.  He hires and fires employees, often participates in pre-shift meetings, and is involved in payroll matters, such as distribution of tip money to tipped employees.

18.     Alessio is listed with the New York State Liquor Authority as a principal of Profundo.

19.     Defendant Seth Levine ("Levine") is an active owner of the Corporate Defendants.

20.     When Levine joined Hotel Chantelle in 2013, an article was published on Eater.com titled "Seth Levine Now Running the Show at Hotel Chantelle."

21.     Levine is regularly present at Hotel Chantelle.  He often participates in pre-shift meetings and is involved in payroll matters, such as the collection of cash and tip money to tipped.

22.     Defendant Levine is listed with the New York State Liquor Authority as a principal of Profundo and Hotel Chantelle.

23.     Defendant Kyle O'Brien ("O'Brien") is an active owner of the Corporate Defendants.

24.     O'Brien's LinkedIn biographical information lists him as the "Managing Partner/Owner" of Hotel Chantelle.

25.     O'Brien is often present on the floor at Hotel Chantelle, where he directs service employees and deals with customer disputes.  O'Brien is often responsible for recording the nightly tip-outs at Hotel Chantelle and signing off on tipped employees' cash deposits so that they may leave at the end of their shifts.

26.     Plaintiff Alyssa Viens ("Viens" or "Plaintiff") was employed by Defendants as a bottle server at Hotel Chantelle from May 2017 until November 22, 2019. She was also employed by Defendants at Profundo Day Club during the summers of 2018 and 2019.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Plaintiff brings the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all bottle servers employed by Defendants at Defendants' Pool Club and Hotel Chantelle locations on or after the date that is three years before the filing of this Complaint ("FLSA Collective").

28.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies,

programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required minimum wage for all hours worked, failing and refusing to pay an overtime wage rate for all hours worked over 40 in a workweek, and allowing non-tipped employees to share in their tips. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

29.     The First, Second, and Third Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30.     Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all bottle servers employed by Defendants at either the Hotel Chantelle or the Pool Club on or after the date that is six years before the filing of this Complaint in this case as defined herein (the "Class Period").

31.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

32.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there at least forty (40) members of the Class.

33.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all minimum wage and overtime pay due, misappropriating Class members' tips, making illegal deductions from wages, and failing to provide Class members with required wage notices.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

34.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

35.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants.  Class action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

37.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law.

b)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work.

c)  Whether Defendants paid Plaintiff and the Class members the appropriate minimum wage for all hours worked.

d)  Whether Defendants paid Plaintiff and the Class members the appropriate overtime wage for all hours worked over forty in a workweek.

e)  Whether Defendants gave Plaintiff and the Class members the wage statements required by New York Labor Law § 195 and the New York Hospitality Wage Order.

f)  Whether Defendants required Plaintiff and the Class members to share gratuities with tip-ineligible employees.

g)  Whether Defendants made unlawful deductions from Plaintiff's and Class Members' tips.

## **FACTS**

38.     Plaintiff's consent to sue form is attached hereto as Exhibit A.

39.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

40.     Plaintiff began working for at Hotel Chantelle in May of 2017 as a bottle server for the Restaurant's late-night bar and nightclub. Plaintiff's responsibilities included selling and serving bottles of liquor to the Restaurant's customers.

41.     From May of 2017 through November 22, 2019, Plaintiff worked at Hotel Chantelle Friday and Saturday nights. Plaintiff began her shifts at 9:45 p.m. and finished between 2 a.m. and 4:30 a.m. Plaintiff also worked six-hour shifts on Thursdays and Sundays approximately twice per month.

42.     Hotel Chantelle is open to customers for dinner every evening and for brunch on weekends. Hotel Chantelle opens for customers on Friday and Saturday nights at 6 p.m. and closes at 4 a.m.

43.     Hotel Chantelle opens its late-night bar and nightclub on Friday and Saturday nights at 10 p.m.  At that time, Hotel Chantelle transforms its space from a restaurant to a night club. However customers generally began arriving for late-night bar service at approximately 11 p.m.

44.     As a bottle server, Plaintiff did not begin serving customers or doing any tipped work until approximately 11 p.m.

45.     Plaintiff arrived at the Restaurant for her shifts at approximately 9:45 p.m. Until the late-night customers arrived at 11 p.m., Plaintiff and the other bottle servers worked to transform the dining area into a nightclub environment. This work included, but was not limited to, removing tables and chairs from the dining area and restocking the bar area with juices, soda water, napkins, and straws.

46.     On nights that Plaintiff worked until closing, she performed 30 to 45 minutes of sidework after customers left. This work included, but was not limited to, putting away menus, table lights, and other items used for the nightclub service. In addition, from approximately May 2018 through October 2018, Plaintiff served as the lead bottle server on her shifts. During that period, Plaintiff remained on duty until at least 4:30 a.m. to organize receipts and cash tips.

47.     Defendants paid Plaintiff and other bottle servers a tip-credit minimum wage minimum wage for all hours worked at Hotel Chantelle, even they spent more than 20% of her shifts on non-tip-generating work.

48.     Defendants recruited Plaintiff Viens to work at Profundo beginning in May 2018 as a bottle server for the pool club and bar.

49.     Profundo is owned and operated by a corporate entity that is owned and controlled by the same individuals that own and operate Hotel Chantelle. Defendants manage employee matters for both the Restaurant and the Pool Club through one centralized human resources department.

50.     For example, Plaintiff Viens received her weekly work schedules for both the Restaurant and the Pool Club from the same Director of Operations, Eduardo Romano.

51.     Further, Plaintiff often contacted Frank Alessio, co-owner of both Defendants, when she had employment-related concerns at either the Pool Club or the Restaurant.

52.     When Defendants told Plaintiff she was terminated, Mr. Romano delivered the message on behalf of both Defendants.

53.     However, Defendants carefully separated payroll for their two locations. Plaintiff received separate paychecks from Hotel Chantelle and Profundo. This separation of payroll caused Plaintiff not to receive the correct overtime pay for all hours she worked over 40 in a workweek and the mandated spread of hours compensation during the seasons when she worked at both locations.

54.     When Plaintiff began working at Profundo, her weekly schedule at the Pool Club throughout the summer season of 2018 was from 11 a.m. until 11 p.m. on Sundays, Mondays, Tuesdays and Thursdays. She also worked 11 a.m. until 7 p.m. Fridays and Saturdays. On Fridays

and Saturdays, Defendants ended Plaintiff's shifts at the Pool Club at 7 p.m. so she could then provide late-night bottle service at the Restaurant. Thus, she consistently worked 64 hours per week at the Pool Club during the Pool Club's 2018 summer season.

55.    Plaintiff's Friday and Saturday shifts in the summer of 2018 at both locations always spanned more than ten hours. However, Defendants did not pay Plaintiff, or other members of the Class, the mandated spread of hours compensation when shifts at both locations on a single day lasted more than ten hours.

56.    During the summer season of 2019, Profundo required Plaintiff to arrive at 9 a.m. on Sundays, Mondays and Thursdays and work until 11 p.m. On Fridays and Saturdays of the 2019 season, Plaintiff worked from 11 a.m. until 7 p.m. Thus, Plaintiff consistently worked 58 hours per week at the Pool Club during its 2019 summer season.

57.    After Plaintiff's Friday and Saturday shifts at the Pool Club in 2019, Defendants scheduled Plaintiff to work the late-night shift at the Restaurant.

58.    Plaintiff's combined Friday and Saturday shifts in the summer of 2019 at both locations always spanned more than ten hours. However, Defendants did not pay Plaintiff, or other members of the Class, the mandated spread of hours compensation when shifts at both locations on a single day lasted more than ten hours.

59.    In 2018 and 2019, Plaintiff's shifts at Profundo on Sundays, Mondays, Tuesdays and Thursdays, were always over ten hours long. Plaintiff did not have scheduled breaks and did not take lunch breaks during those shifts.

60.    During the summers of 2018 and 2019, when Plaintiff worked for both Defendants' locations, she worked more than 40 hours per week every week. In fact, in the summer of 2018, Plaintiff worked approximately 76 hours at both Defendants' locations combined (four 12-hour

shifts plus two 8-hour shifts at the Pool Club and two 6-hour shifts at the Restaurant). In the summer of 2019, Plaintiff worked approximately 70 hours at both Defendants' locations combined (three 14-hour shifts plus two 8-hour shifts at the Pool Club and two 6-hour shifts at the Restaurant).

61.     Defendants calculated Plaintiff's hours separately at each of their locations for the purposes of payroll. Thus, Defendants did not pay Plaintiff proper overtime wages for all the hours she worked over 40 in a workweek at both locations.

62.     In 2019, bottle servers at the Pool Club, including Plaintiff, began their shifts three hours before the Pool Club opened to customers at noon. Prior to opening to customers, Plaintiff and other members of the Class set up the pool deck area and the bar. This work included cleaning and making the sunbeds that are set up throughout the pool deck area, stocking cups and glasses, rolling silverware, setting up ice buckets and stocking champagne.

63.     Plaintiff and other members of the Class also performed untipped work after the Pool Club closed to customers at 9 p.m. From 9 p.m. until 11 p.m. Plaintiff and other members of the Class cleaned the pool deck areas and prepared the Pool Club for the next day's business.

64.     Plaintiff and other bottle servers were paid the tip-credit minimum wage for these hours when they were performing untipped work. Further, this untipped work lasted more than two hours and comprised more than 20% of Plaintiff's and other Class members' shifts at the Pool Club.

65.     Defendants were not entitled to pay Plaintiff and other members of the Class a tip-credited minimum wage for the shifts in which they performed untipped work for more than 2 hours or 20% of each shift.

66.     Profundo and Hotel Chantelle also charged Plaintiff and other members of the Class for "family meals" on every shift by deducting $3 per day from their wages. Plaintiff and the Class members were charged this fee regardless of whether they received the family meal. Defendants also deducted from Plaintiff's wages on at least two occasions the cost of earpieces that Defendants required bottle servers to wear during their shifts.

67.     As a result of these improper deductions from Plaintiff's tip-credit minimum wage, Defendants did not pay Plaintiff at least the New York minimum wage for each hour she worked.

68.     In addition, Plaintiff's wage statements from both locations did not indicate that she was paid a tip-credit minimum wage as required by New York State law.

69.     Defendants required Plaintiff to purchase from her own pocket an earpiece. Because Plaintiff was paid exactly the foodservice workers minimum wage, this reduction in pay resulted in Plaintiff being paid less than the minimum wage for those weeks.

70.     Plaintiff and other bottle servers at both locations were also required to share two percent of their tips with kitchen staff who were not involved in serving Defendants' customers.

**FIRST CLAIM FOR RELIEF**
**FLSA Overtime Wage Claims, 29 U.S.C. § 201, et seq.,**
**Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs**

71.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72.     Throughout the statute of limitations period covered by these claims, Plaintiff and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

73.     At all relevant times, Defendants had and operated under a decision, policy and plan of willfully failing to pay Plaintiff and the FLSA Collective Plaintiffs at one- and one-half times their regular hourly rate for work performed at both Defendants' locations in excess of forty (40) hours per workweek.

74.     Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### FLSA Illegal Deductions from Gratuities, 29 U.S.C. § 203(m)
### Brought by Plaintiff on Behalf of Herself and the FLSA Collective Plaintiffs

75.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

76.      Defendants illegally required Plaintiff and the FLSA Collective Plaintiffs to share gratuities with ineligible employees.

77.      As a result of Defendants' willful and unlawful conduct, Plaintiff and the FLSA Collective Plaintiffs are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, post-judgment interest, and costs and attorneys' fees.

## THIRD CLAIM FOR RELIEF
### New York State Minimum Wage Act, New York Labor Law § 650 *et seq.*
### Brought by Plaintiff on Behalf of Herself, the Class, and the Opt-In Plaintiffs

78.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

79.     Defendants knowingly paid Plaintiff and the Class members less than the New York minimum wage as set forth in N.Y. Lab. Law § 652 and supporting regulations of the New York State Department of Labor.

80.     As a result of Defendants' unlawful conduct, Plaintiff and the Class members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FOURTH CLAIM FOR RELIEF
### New York Overtime Violations
### New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.*,
### N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.4
### Brought by Plaintiff on Behalf of Herself, the Class, and the Opt-In Plaintiffs

81.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

82.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

83.     Throughout the Class period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate of one-and-one-half times the minimum wage for hours worked in excess of forty (40) hours per workweek.

84.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FIFTH CLAIM FOR RELIEF
### New York Notice Requirements, N.Y. Lab. L. §§ 195, 198
### Brought by Plaintiff on Behalf of Herself, the Class and the Opt-In Plaintiffs

85.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

86.     Defendants did not provide Plaintiff with the notices and proper wage statements required by N.Y. Lab. Law § 195.

87.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined

at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 198.

### SIXTH CLAIM FOR RELIEF
**Illegal Deductions from Gratuities, N.Y. Lab. L. § 196-d**
**Brought by Plaintiff on Behalf of Herself, the Class, and the Opt-In Plaintiffs**

88.      Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

89.      Defendants illegally required Class Members to share gratuities with tip-ineligible employees.

90.      As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
**Illegal Deductions from Wages, N.Y. Lab. L. § 193**
**Brought by Plaintiff on Behalf of Herself, the Class and the Opt-In Plaintiffs**

91.      Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

92.      Defendants illegally deducted money from Plaintiff's and the Class members' wages for meals they did not receive and for work equipment.

93.      As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### EIGHTH CLAIM FOR RELIEF
**New York Spread of Hours Violations**
**New York Minimum Wage Act, N.Y. Stat. § 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6**
**Brought by Plaintiff on Behalf of Herself, the Class, and the Opt-In Plaintiffs**

94.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

95.     Through the relevant period, Plaintiff and Class members regularly worked shifts at Defendants' Restaurant and Pool Club locations during the summer season.

96.     These double shifts spanned more than ten hours in a day, but Defendants did not pay Plaintiff and the Class members the required "spread of hours" compensation as required by New York Labor Law.

97.     As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, and members of the Class, prays for relief as follows:

A.  An award of damages, according to proof, including back pay and liquidated damages, to be paid by Defendants;

B.  Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

C.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

D.  Designation of this action as a class action pursuant to F.R.C.P. 23;

E.  Designation of Plaintiff as Representative of the Class;

F.  An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

G.  An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, and punitive damages, to be paid by Defendants;

H.  Penalties available under applicable laws;

I.  Costs of action incurred herein, including expert fees;

J.  Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

K.  Pre-judgment and post-judgment interest, as provided by law; and

L.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York
            May 15, 2020

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: */s/ D. Maimon Kirschenbaum*
        D. Maimon Kirschenbaum
        32 Broadway, Suite 601
        New York, NY 10004
        Tel: (212) 688-5640

*Attorneys for Plaintiff, putative FLSA Collective Plaintiffs, and putative Class members*

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands jury trial on all causes of action and claims with respect to which she has a right to jury trial.